# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

GABRIEL GONZALEZ,
REG. #30515-112                                                    PLAINTIFF

v.                           2:16CV00119 JLH/JTR

CARLOS RIVERA,
Former Warden, FCI-FC, et al.                                    DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge J. Leon Holmes. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received by the Clerk of this Court within fourteen (14) days of this Recommendation. If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I.  Introduction

Plaintiff Gabriel Gonzalez ("Gonzalez") filed this *Bivens* action alleging that former FCI-FC Chaplain Peter Landers ("Chaplain Landers"), FCI-FC Supervisory Chaplain Thomas Johnson ("Chaplain Johnson"), and former FCI-FC Warden Carlos Rivera ("Warden Rivera") violated his rights under the Free Exercise and Establishment Clauses of the First Amendment, the Religious Freedom Restoration Act ("RFRA"),[1] and the Equal Protection Clause of the Fourteenth Amendment. Those alleged constitutional violations arose from the Defendants not allowing him: (1) to attend a Catholic Easter event on March 24, 2016;[2] (2) to receive "Catholic 'Good Friday' meal provisions [so he could] participate in ... Catholic fasting activities" on March 25, 2016;[3] and (3) to have the opportunity to attend a "make-up" Catholic Easter event on March 28, 2016, which left him, as his only option, attending the Protestant Easter event on March 28, 2016.[4]  Gonzalez seeks monetary damages, as well as declaratory and injunctive relief.

---

[1]  42 U.S.C. § 2000bb–1.

[2]  Gonzalez's Amended Complaint, *Doc. 4, p. 3*.

[3]  *Doc. 4, p. 4*.

[4]  *Doc. 4, pp. 4-5*.

2

Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Facts. (*Doc. 72, 73, and 74*).[5]  Gonzalez has filed two Responses in opposition. (*Docs. 82 and 83*).  Defendants have filed a Reply. (*Doc. 85*). Thus, the issues are fully joined and ready for disposition.

Before addressing the merits of Defendants' Motion for Summary Judgment, the Court will summarize the relevant facts surrounding Gonzalez's constitutional claims[6]:

1.    Gonzalez is a Catholic prisoner in the Federal Correctional Institution in Forrest City, Arkansas ("FCI-FC"). (Gonzalez's Amended Complaint, *Doc. 4, ¶ 3, 7*).

2.    Chaplain Landers was a chaplain at FCI-FC in March of 2016. (Declaration of Peter Landers, *Doc. 73-2, p. 2-3*).

---

[5]  Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. See Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

[6]  While some of these facts are in dispute, none of the disputed facts are "material" to the resolution of Gonzalez's constitutional claims. Accordingly, they do not prevent the Court from ruling on the merits of Gonzalez's claims under Rule 56(a) of the *Federal Rules of Civil Procedure*.

3.    In March of 2016, Rivera was Warden of FCI-FC and Chaplain Johnson was the Supervisory Chaplain.  (Defendants' Answer, *Doc. 29, ¶ 4*; Declaration of Thomas Johnson, *Doc. 73-1, p. 2*).

4.    In 2016, Catholic mass at FCI-FC was scheduled each Thursday, usually at 6:00 p.m. (Declaration of Chaplain Landers, *Doc. 73-2, p. 2-3*; Gonzalez's Supplemental Response to Motion for Summary Judgment, *Doc. 83, p. 2*).

5.    Easter Sunday fell on March 27, 2016, which meant Easter Mass at FCI-FC normally would have been conducted at 6:00 p.m. on Thursday, March 24, 2016.

6.    According to Gonzalez, Father Vu was the Catholic priest who conducted mass at FCI-FC in 2016. Sometime in March, Father Vu explained to Gonzalez that:

(1)    "[H]e would not be [available to] hold Mass on March 24, 2016, and that the prison was going to be having a special service for the Catholic observation of Easter where an Easter Feast was going to be served to the [Catholic] inmates [who] ... could observe Easter during that celebration[.]"

(2)    "[V]olunteers from the local [Catholic] church would also not be in attendance at the prison on March 24, 2016[,] to hold Catholic religious services but that [Gonzalez and the other Catholic prisoners] could all expect to attend Mass the following week at our scheduled time."

(Gonzalez's Response to Summary Judgment, *Doc. 82, pp. 23-24*).

7.     As part of the religious celebrations leading up to Easter in 2016, Gonzalez states that Catholic prisoners in FCI-FC were allowed to participate in "the celebration of Maundy" and "Father Vu performed a ceremonial 'washing of the feet' in the prison's chapel." (*Doc. 82, pp. 4-5*).

8.     At 1:00 p.m. on Thursday, March 24, 2016, the Catholic Easter event (which Father Vu had previously explained would be held in lieu of a Catholic Mass) took place in the FCI-FC dining hall. Catholic prisoners who wished to attend that event were required to sign up in advance so that the kitchen staff would know how much food to prepare for the meal.[7]  (Gonzalez's Amended Complaint, *Doc. 4, ¶¶ 7, 15*; Declaration of Chaplain Johnson, *Doc. 73-1, ¶ 5, 7*; Declaration of Chaplain Landers, *Doc. 73-2, ¶ 9*). The Catholic Easter event included a prayer, a special meal (which Father Vu previously had described to Gonzalez as an "Easter Feast"), followed by inmates speaking about the importance of Easter.  (Declaration of Luis Garcia, *Doc. 82, p. 22*).[8]

---

[7] Because an Easter meal was served, as part of this event, it required advanced planning and preparation by the kitchen staff at FCI-FC. This meant Catholic prisoners had to *sign-up in advance* to attend the event. On its face, the sign-up requirement was *religiously neutral* and was only imposed to ensure that enough food was prepared to serve everyone attending the event.

[8] In his motion papers, Gonzalez sometimes refers to the 1:00 p.m. event as a "Catholic Easter ceremonial meal" or a Catholic "*religious service*". (Gonzalez's Supplemental Response to Motion for Summary Judgment, *Doc. 83, p. 3*). While Mass was not part of the event, its purpose was to allow Catholic prisoners to celebrate Easter by having a special meal, followed by Catholic prisoners speaking about the importance of Easter.

9.      The Protestant Easter event was scheduled to take place on Monday, March 28, 2016, in the FCI-FC dining hall. (Declaration of Ambrosio Medrano, *Doc. 82, p. 25*). Because it also included a meal for Protestant prisoners, those wishing to attend were required to sign up in advance, just as Catholic prisoners had been required to sign up to attend the Catholic Easter event on March 24, 2016. (Gonzalez's Response to Motion for Summary Judgment, *Doc. 83, p. 4*).[9]

10.     According to Gonzalez, he signed up to attend the Catholic Easter event on March 24, 2016. (*Doc. 82, p. 23*). Chaplain Louis Ford ("Chaplain Ford") has documented that Gonzalez's name appeared on a "callout list" to be off work on March 24, 2016:

> The call out sheet for 3-24-2016 [reflects] inmate Gabriel Gonzalez #30515-112 was on WORK PRO which was designated as a religious day off. This was the day for the religious Catholic meal. There was no other special Catholic observance on that day.

(Chaplain Ford's Memo in Gonzalez's Inmate Central File, *Doc. 73-1, p. 11*). Because it appears Gonzalez arranged to be *off work* on March 24, 2016, Chaplain

---

[9] It is undisputed that prison administrators implemented this *religiously neutral* sign up requirement for both the Catholic and Protestant Easter events because they both involved the kitchen staff preparing special meals, which required them to know, *in advance*, the number of prisoners they would be serving. (Gonzalez's Response to Motion for Summary Judgment, *Doc. 83, p. 4*; Declaration of Thomas Johnson, *Doc. 73-1, ¶ 5*).

Ford's Memo provides some support for Gonzalez's claim that he signed up for and planned to attend the Catholic Easter event at 1:00 p.m. on that date.[10]

> 11.    In his Declaration, Chaplain Johnson states that:
>
> > Inmate Gonzalez failed to sign up for the March 24, 2016 Catholic Easter Service ceremonial meal. As a result of not signing up for the meal, he was not allowed admittance to the meal only because food service needed to know in advance how many inmates would attend the complimentary meal. Only inmates that did not sign up for the ceremonial meal were denied access.

(*Doc. 73-1, pp. 2-3*).[11]

> 12.    For purposes of analyzing Gonzalez's constitutional claims, the Court will accept as true, Gonzalez's sworn statement that he properly signed up, in advance, to attend the March 24, 2016 Catholic Easter event. It appears someone

---

[10]  As will be explained later, in the Court's legal analysis of Gonzalez's free exercise and RFRA claims, whether he did or did not sign up to attend the Catholic Easter event is *not* material to resolution of those legal issues.

[11]  In his Declaration, Chaplain Johnson provides *no facts* to support his conclusory assertion that "Gonzalez failed to sign up for the March 24, 2016 Catholic Easter Service ceremonial meal." He also suggests the "ceremonial meal" for Catholics and Protestants was a "courtesy" – not a "religious requirement." This characterization is inaccurate and misleading. The prayer, the meal, and the lay witnessing by prisoners, explaining the importance of Easter, were *all* parts of a religious celebration of one of Christianity's most holy days. It was clearly far more than a "courtesy" for FCI-FC to allow prisoners to exercise their First Amendment right to *celebrate* Easter, and include, as part of that celebration, a special meal.

Both Chaplain Johnson and Chaplain Landers also deny "in the strongest terms possible that [they], [FCI-FC], or Religious Services deny services to Catholics or any other denomination [and further] deny that [they] or anyone associated with Religious Services intentionally denied [Gonzalez] access or impede his ability to practice his Catholic faith." (*Doc. 73-1, p. 4; Doc. 73-2, p. 2-3*). While the Court does not doubt the sincerity of Chaplain Johnson and Chaplain Landers, their statements are self-serving and conclusory and entitled to little evidentiary weight in evaluating the merits of Gonzalez's claims.

7

then used the signup sheet to prepare a separate list, which reflected the names of those prisoners who were to be admitted to the Catholic Easter event.

13.    According to Chaplain Ford, someone gave him a list with the names of the prisoners who were to be admitted to the Catholic Easter event. Chaplain Ford was only allowed to admit those prisoners to the dining hall whose names appeared on the list. (*See* Chaplain Ford's Responses to Gonzalez Informal Resolution Attempt, *Doc. 82, p. 19-20*; and Gonzalez's Amended Complaint, *Doc. 4, p. 3*).

14.    According to Chaplain Ford, Gonzalez's name was *not* on the list. As a result, Chaplain Ford did not allow Gonzalez and several other Catholic prisoners whose names were not on the list to enter the dining hall and participate in the Catholic Easter event on March 24, 2016. (Chaplain Ford's Responses to Gonzalez's Informal Resolution Attempt attached to Gonzalez's Response, *Doc. 82, p. 20*). According to Chaplain Ford, this was the *sole reason* he did not allow Gonzalez to attend the Catholic Easter event. (*Id.*).

15.    According to Gonzalez:

> After selecting approximately [15-20 out of 50] participants the guards announced that there would be no additional Catholic members permitted to attend the Catholic Service because food service personnel had not prepared enough food to accommodate everyone and further declared that they would not provide an alternative celebratory meal or service for those whom they are unable to accommodate.

(*Doc. 4, p. 3*).

8

16.    Regardless of *who* turned Gonzalez away from the Catholic Easter event on March 24, 2016, *the reason given for doing so was the same*: kitchen staff at FCI-FC had not prepared enough food to accommodate Gonzalez and the other Catholic prisoners who were not allowed to enter the dining hall. The dispute over whether "Chaplain Ford" or "guards" told Gonzalez he could not enter the dining hall and attend the Catholic Easter event is *not* material to the resolution of Gonzalez's constitutional claims.

17.    According to Chaplain Ford's Informal Resolution Response, after telling Gonzalez he could not enter the dining hall to participate in the Catholic Easter event, he said he would "try to get them [to] eat with the Protestant[s] on their meal day [on March 28, 2016]." (*Doc. 82, p. 20*). According to Gonzalez, "Chaplain Ford created a roster of the Catholic inmates who were denied admission to the Easter service [on March 24, 2016]...so that he could coordinate a make-up service[.]" (Gonzalez's Supplemental Response to Motion for Summary Judgment, *Doc. 83, p. 4*).

18.    Chaplain Ford and Gonzalez disagree about whether Chaplain Ford offered to try to arrange for Gonzalez to attend the Protestant Easter event on March 28, 2016 (Chaplain Ford's version of the facts), *or* whether Chaplain Ford offered to try to arrange a "make-up" Catholic Easter event on March 28, 2016, that Gonzalez and the other Catholic prisoners would be allowed to attend (Gonzalez's

version of the facts). As will be explained later in its legal analysis of Gonzalez's constitutional claims, the Court finds these disputed facts are *not* material to the resolution of the legal issues.[12]

19.    Nothing in the record suggests that Chaplain Landers had any responsibility or authority for planning or admitting prisoners to the Catholic Easter event. On and after March 24, 2016, no one told Chaplain Landers that Chaplain Ford was trying to arrange for Gonzalez or other Catholic prisoners to attend the Protestant Easter event on March 28, 2016, or have a "make-up" Catholic Easter event on that date.  (Declaration of Chaplain Landers, *Doc. 73-2, p. 3*).

20.    In his Amended Complaint, Gonzalez alleges that Chaplain Landers submitted a list of *select* attendees for the Catholic Easter meal and Good Friday fast. (*Doc. 4*). However, Gonzalez has come forward with *no facts* to support that conclusory allegation. In his Response to the Motion for Summary Judgment, Gonzalez offers the Declaration of Bruce Crain in an attempt to support his claim that Chaplain Landers was involved with the preparation of the list of names of those

---

[12] Gonzalez makes many statements that are in direct conflict with each other, something that seriously undermines his credibility. For example, in his pleadings, Gonzalez states the "guards" who turned him away from attending the March 24, 2016 Catholic Easter event told him there would be "no alternative celebratory meal or service for those whom they are unable to accommodate." (*Doc. 4, p. 3*). Later, in his Supplemental Response to Defendants' Motion for Summary Judgment, he states that "Chaplain Ford created a roster of Catholic prisoners who were denied admission to the Easter service ... so that he could coordinate a make-up service." (*Doc. 83, p. 4*). The statements Gonzalez imputes to "the guards" and "Chaplain Ford" are in direct conflict, which makes Gonzalez's constitutional claims appear to be somewhat of a moving target.

prisoners who had signed up for the Catholic Easter meal. (*Doc. 82, p. 6*). While Crain's Declaration explains his responsibilities, as a supervisory clerk for Religious Services, and the usual process for scheduling religious meals, *he makes no mention of Chaplain Landers having any involvement in preparing the list of names of those inmates who had signed up to attend the Catholic Easter meal*. (*Doc. 82, p. 31-34*). Gonzalez speculates that, because Chaplain Ford was on vacation in the weeks leading up to the Catholic Easter event on March 24, 2016, this must mean that Chaplain Landers was responsible for preparing the list. (*Doc. 82, p. 6*). However, he provides *no facts* to support this speculation. Accordingly, the Court accepts Chaplain Landers's unrebutted sworn statement that he had no involvement with any aspect of the Catholic Easter event on March 24, 2016, including the preparation of the list of prisoners who had signed up to attend that event.

21.    In Gonzalez's Informal Resolution, he makes it clear that, when Chaplain Landers offered him the chance to attend the Protestant Easter event, on March 28, 2016, *he declined* because he is not Protestant:

> On March 28[], 2016, I was told [presumably by Chaplain Landers] that there would be no 'make-up' Catholic service and as an alternative, I could attend the Protestant service for that day[;] I did not attend as I am not Protestant.

(*See* Gonzalez's Motion for Reconsideration to Recommended Partial Disposition, *Doc. 11, p. 32*).

11

22.    Chaplain Landers was responsible for admitting prisoners to the Protestant Easter event on March 28, 2016. (Declaration of Chaplain Landers, *Doc. 73-2, p. 6*). According to Chaplain Landers:

> I was under the same constraints that staff at the Thursday Catholic Easter meal were under: Food Services prepared food for the inmates that had signed up for the ceremonial meal. Therefore, I could not allow Inmate Gonzalez to attend the Protestant Easter ceremonial meal.

(Declaration of Chaplain Landers, *Doc. 73-2, p. 3*). Thus, according to Chaplain Landers, he did *not* invite Gonzalez to attend the Protestant Easter meal.

23.    Gonzalez states that he went to the dining hall on March 28, 2016, with the expectation of being admitted to the "make-up" Catholic Easter event that Chaplain Ford told him he would try to arrange. According to Gonzalez, he encountered Chaplain Landers outside the dining hall and he told Gonzalez that only the long scheduled Protestant Easter event would be taking place at 6:00 p.m., but Gonzalez was welcome to attend. (*See* Gonzalez's Informal Resolution attached in support of his Motion for Reconsideration to Recommended Partial Disposition, *Doc. 11, p. 32*). After Gonzalez declined the invitation, he claims that he heard Chaplain Landers say: (1) Catholics and Protestants are "almost the same[,]" and (2) if the Catholics "did not like it they could go without." (Gonzalez's Amended Complaint, *Doc. 4*).

12

24.    There are simply no facts in the record to support Gonzalez's facially implausible claim that he somehow believed a make-up Catholic Easter event had been scheduled in the dining hall on the precise date and time that the long scheduled Protestant Easter event was taking place.[13]

25.    Gonzalez also alleges that he signed up to fast on Good Friday, March 25, 2016, but was unable to secure the "Catholic 'Good Friday' meal provisions" necessary for him to participate in the fast.[14] (*Doc. 4*). It appears Gonzalez did not receive these "meal provisions" because his name was not on the signup list to participate in a Good Friday fast. (Gonzalez's Statement of Disputed Facts, *Doc. 84, p. 6 at ¶ 11*).

26.    Gonzalez has provided declarations and grievances from fellow inmates indicating that a Catholic Good Friday fast was offered in 2016. (*Doc. 82, pp. 21-30*).

---

[13]    FCI-FC has only one dining hall available to host such events. Yet, Gonzalez claims that, without ever checking back with Chaplain Ford to see if he had been successful in scheduling a make-up event for Catholic prisoners, he *assumed* Chaplain Ford had been successful in doing so, *and*, he had rescheduled it to take place at the *same time* Protestant prisoners were scheduled to have their Easter event in the dining hall.

[14]    It appears these "meal provisions" were provided to allow prisoners to have something to eat when their Good Friday fast ended. Apparently, after learning no "meal provisions" were available for him, Gonzalez did not consider the *still remaining option* of undertaking an Easter fast, without "meal provisions," which would have meant he would have had to go without food for approximately 18 hours.

27.    According to the sworn Declaration of Chaplain Johnson, to his knowledge, no Catholic Good Friday fast was scheduled on March 25, 2016, which meant no "meal provisions" were offered to *any* Catholic prisoners. (*Doc. 73-1, ¶ 23*). Chaplain Johnson explains that, if Gonzalez wished to fast, he was required to submit a request well before that date so that FCI-FC Religious Services could determine how to handle the requested accommodation. (*Id.*).

28.    As explained later, in analyzing Gonzalez's claim that his free exercise and RFRA rights were violated, the factual dispute about whether he did or did not sign up for "meal provisions" is *not* material to the resolution of the relevant legal issues.

29.    Warden Rivera was not involved in any aspect of the administration of any of FCI-FC's Easter ceremonies in 2016, all of which were handled by FCI-FC's Religious Service Department. (Former Warden Rivera's Responses to Gonzalez's Requests for Admissions attached to Gonzalez's Response to the Motion for Summary Judgment, *Doc. 83, p. 9*).

## II. Discussion

### A.    Gonzalez's Free Exercise and RFRA Claims

At the summary judgment stage, Gonzalez must be able to support his free exercise and RFRA claims with facts demonstrating that the government placed a "substantial burden" on his ability to practice his religion. *Patel v. U.S. Bureau of*

*Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) (citations omitted).  If he fails to do so, the constitutional analysis ends, and the Court "need not apply the *Turner* test to the Free Exercise claim and the strict scrutiny test to the [RFRA] claim." *Id*.

As Defendants correctly point out, courts have *nearly uniformly* held that isolated acts or omissions do not constitute a substantial burden on religious freedom. *See Mubashshir v. Moore*, 2011 WL 1496670, at *6 (N.D. Ohio Apr. 19, 2011) (denying inmates services in chapel on two occasions were considered isolated instances that did not constitute a substantial burden on Muslim inmate's religious freedom) (citing *Gunn v. Kentucky*, 2010 WL 2555756, at *5 (W.D. Ky. June 18, 2010); *Randall v. McLeod*, 1995 WL 581973, at *4 (5th Cir. Sept. 15, 1995) (affirming district court's dismissal of First Amendment claim based on plaintiff not getting a pork-free meal on two occasions); *White v. Glantz*, 1993 WL 53098, at *2 (10th Cir. Feb. 25, 1993) (finding that an "isolated occurrence of being given two meals with green beans and bacon" did not violate a Muslim inmate's First Amendment rights); *Greenberg v. Hill*, 2009 WL 890521, at *6 (S.D. Ohio Mar. 31, 2009) ("[I]solated or sporadic government action or omission is *de minimis* and does not constitute a 'substantial burden.'"); *Marr v. Case*, 2008 WL 191326, at *5 (W.D. Mich. Jan.18, 2008) ("The one time deprivation of a kosher eating utensil does not amount to a substantial burden of Plaintiff's ability to exercise his religion."). *See also Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) ("isolated negligent

act of the Defendants cannot support a claim that the Plaintiff was denied his First Amendment right to freedom of religion."); *Schreane v. Seana*, 506 F. App'x 120, 124 (3d Cir. 2012) (accord); *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1215 (9th Cir. 2017) (citing *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[N]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause.")); *Ford v. Bureau of Prisons*, 2013 WL 5603587, *8 (M.D. Pa. 2013) (missing one public fasting did not allege a substantial burden on inmate's religious freedom).

In his pleadings, Gonzalez alleges only two instances in which his Free Exercise and RFRA rights were violated: (1) When he was not allowed to enter the dining hall for the Catholic Easter event on March 24, 2016, because his name was not on the list of admittees; and (2) When he was not allowed "meal provisions" for a Good Friday fast on March 25, 2016, because his name, once again, was not on the list to receive those supplies. Gonzalez offers no evidence that the reason he was precluded from participating in those two events was the result of anything other than garden variety negligence by the persons responsible for preparing those lists. Furthermore, Gonzalez has come forward with *no facts* suggesting that Defendants Chaplain Landers, Chaplain Johnson, or Warden Rivera had *any involvement* with preparing those lists, or otherwise engaged in *any actions* that were aimed at

interfering with his free exercise of his religious beliefs as a Catholic with regard the March 24, 2016 Catholic Easter event, or the Good Friday fast on March 25, 2016.

In addition, the two incidents Gonzalez complains about took place within a 24-hour period and clearly appear to have been isolated and not part of a repeated or systematic effort to burden the religious rights of Catholic prisoners in FCI-FC. As Gonzalez admits, earlier in March of 2016, Catholic prisoners were allowed to celebrate Maundy and participate in a foot washing ceremony that Father Vu presided over. Additionally, Catholic Mass was held every Thursday in March, except for March 24, 2016, when neither Father Vu nor another local priest was available to conduct that ceremony. Finally, Gonzalez admits that while the two isolated events prevented him and a few other Catholic prisoners from participating in the March 24, 2016 Catholic Easter event and Good Friday fast, all of the other Catholic prisoners whose names appeared on the signup lists were allowed to fully participate in those activities.

Finally, citing *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017), Defendants make a compelling argument that Gonzalez's free exercise claims cannot be brought in a *Bivens* action. While the Eighth Circuit has not yet interpreted *Abbasi*, in *Patel*, *supra* at 813 n.6, the Court noted that "[we have] never found a *Bivens* action to extend to a Free Exercise claim, and it is doubtful that we would do so." Thus, this Court concludes that *Abbasi* provides an alternative basis for denying the free

17

exercise claims Gonzalez is attempting to maintain against the Defendants in this *Bivens* action.

Accordingly, the Court recommends that Defendants Motion for Summary Judgment be granted as to the free exercise and RFRA claims Gonzalez has asserted against them.

### B.    Gonzalez's Establishment Claim

Gonzalez makes a conclusory, factually unsupported, and difficult to understand Establishment Clause claim that is apparently based on Chaplain Landers allegedly giving him the option of attending the Protestant Easter event on March 28, 2016, or losing the chance to participate in any Easter event for calendar year 2016. (*Doc. 4, pp. 11-12*). This argument is in *direct conflict* with Gonzalez's own pleadings in which he *admits* he voluntarily declined Chaplain Landers's invitation to attend the Protestant Easter event on March 28, 2016: "I was told that there would be no 'make-up' Catholic service and as an alternative, I could attend the Protestant service for that day[;] I did not attend as I am not Protestant."[15]   (*See* Gonzalez's Motion for Reconsideration to Recommended Partial Disposition, *Doc. 11, p. 32*).

---

[15] According to Chaplain Landers's sworn Declaration, when Gonzalez arrived at the dining hall prior to the scheduled Protestant Easter event on March 28, 2016, he told Gonzalez he knew nothing about a "make-up" Catholic Easter event that supposedly was to take place on that date and that he could only admit prisoners to the Protestant Easter event if there names were on the admissions list, which did *not* include Gonzalez's name. For purposes of resolving Defendants' Motion for Summary Judgment, the Court will accept as true Gonzalez's statement that Chaplain Landers invited Gonzalez to attend the Protestant Easter event.

There is no evidence that Chaplain Landers's invitation for Gonzalez to attend the Protestant Easter event was in any way coercive. As Gonzalez *admits*, he felt free to decline that invitation and leave – which he did. Thus, Gonzalez has failed to provide any facts to support his claim that any of the Defendants ever coerced or tried to make him attend the Protestant Easter event on March 28, 2016.

Gonzalez also tells a convoluted story about Chaplain Ford telling him that he would try to arrange for Gonzalez and other similarly situated Catholic prisoners to attend a "make-up" Catholic Easter event on March 28, 2016. *Doc. 4, p. 3.* Because Gonzalez has *not* named Chaplain Ford as a Defendant, the Court need not address the circumlocution surrounding a claim that appears to be directed at a non-party.

The Establishment Clause prohibits government action that establishes an official religion or coerces individuals into participating in a particular religion. *Jackson v. Nixon*, 747 F.3d 537, 542 (8th Cir. 2014); *Munson v. Norris*, 435 F.3d 877, 880 (8th Cir. 2006); *Tarsney v. O'Keefe*, 225 F.3d 929, 935 (8th Cir. 2000). To have Article III standing to bring an establishment claim, Gonzalez must allege a personal injury fairly traceable to Defendants' allegedly unconstitutional conduct. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 817 (8th Cir. 2008). This requires Gonzalez to show that "[he] altered [his] behavior and had direct, offensive, and alienating contact with" a government-funded religious program. *Id.* (citing *Ams.*

*United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 419 (8th Cir. 2007)).

In March of 2016, FCI-FC provided Catholics and Protestants with the *same opportunity* to attend similar Easter celebrations. Gonzalez's name was left off the list of prisoners who signed up for the Catholic event on March 24, 2016, and it appears the "makeup" event for Catholic prisoners (which Chaplain Ford may or may not have tried to schedule) never materialized. Taking all of these allegations and viewing them in the light most favorable to Gonzalez, he has failed to come forward with any evidence suggesting that any of the Defendants ever required, coerced, or pressured him to attend the Protestant Easter event on March 28, 2016, or otherwise undertook any actions that could be construed as an attempt to establish an official religion at FCI-FC.[16]

Finally, because the Easter accommodation provided to Protestant prisoners was the *same* accommodation provided to Catholic prisoners, Gonzalez cannot argue that he suffered any First Amendment injury arising from any of the alleged actions

---

[16] Chaplain Landers's alleged comment about Catholics and Protestants being "almost the same" proves only that he has no understanding of either the Catholic faith or the Protestant Reformation. While his alleged comment that, if the Catholics "did not like it they could go without," suggests a certain degree of hostility toward Catholics, it falls far short of constituting an effort to establish a particular religion in FCI-FC. *Cf. McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail officials did not rise to the level of a constitutional violation).

of the Defendants. The absence of such an injury deprives Gonzalez of the required standing necessary to pursue his Establishment Clause claim against the Defendants.

## C.    Equal Protection Claim

Liberally construed, Gonzalez's Complaint alleges that Defendants violated his right to equal protection by preventing him from participating in the Catholic Easter event, but apparently allowing Protestant inmates whose names were not on the attendee list to be admitted to the Protestant Easter event. There are *no facts* in the record that support Gonzalez's speculation that Protestant prisoners were admitted to the Protestant Easter event on March 28, 2016, even though their names were not on the attendee list.

To establish this equal protection claim, Gonzalez must show that prison officials intentionally treated him differently from similarly situated Protestant prisoners. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008); *Nolan v. Thompson*, 521 F.3d 983, 990 (8th Cir. 2008). In the context of claims under the Free Exercise and Establishment Clauses of the First Amendment, Gonzalez must show that he was denied a religious accommodation that was granted to Protestant prisoners. *See, e.g., Patel*, 516 F.3d at 815-17 (8th Cir. 2008) (Muslim prisoner alleged that he denied a religiously mandated halal diet while Jewish prisoners were given kosher meals); *Murphy v. Mo. Dept. of Corr.*, 372 F.3d 979, 984-85 (8th Cir. 2004) (Christian Separatist prisoners alleged that they were denied permission to

hold racially segregated religious services while National of Islam and Moorish Science prisoners were allowed to do so).

For purposes of Gonzalez's claim that he was denied entry to the Catholic Easter event on March 24, 2016, because his name was not on the list of admittees, he also must show that his exclusion was motivated by intentional or purposeful discrimination. *Patel*, 515 F.3d at 816 (citing *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir.2007); *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir.2003)).

Gonzalez has provided *no evidence* to show that Protestants were allowed to have an Easter event but Catholics were not. To the contrary, the record demonstrates that: (1) an almost identical Easter event was held for both Catholics and Protestants in FCI-FC; (2) sign-up sheets were required for prisoners who wished to attend those events; and (3) only Catholic and Protestant prisoners whose names appeared on their respective attendee lists were admitted to the dining hall.

It is undisputed that Chaplain Ford's sole reason for not admitting Gonzalez to the Catholic Easter event was the fact his name did not appear on the list of attendees someone provided to Chaplain Ford. It is also undisputed that, when Gonzalez approached Chaplain Landers on March 28, 2017, about the "makeup" Catholic Easter event, Chaplain Landers was using a similar list to admit prisoners to the Protestant Easter event, based on those prisoners who had signed up for it in

advance.[17] Finally, Gonzalez has provided no evidence that his name not being on the lists, which prevented him from participating in the Catholic Easter event on March 24, 2016, and Good Friday fast, was the result of anything other than negligence by whomever prepared those two lists. He has offered no facts suggesting that any of the Defendants: (1) had any role in preparing those lists; (2) acted willfully or purposefully to prevent him from participating in those events; or (3) engaged in any intentional or purposeful discrimination against him.

Thus, Gonzalez has failed to put forward facts demonstrating anything more than an error or omission by the person or persons responsible for preparing the two lists in question. As a matter of law, such negligent conduct cannot support a constitutional violation under the Fourteenth Amendment. *Batra v. Bd. of Regents of Univ. of Nebraska*, 79 F.3d 717, 721 (8th Cir. 1996) (explaining mere governmental negligence is insufficient to sustain equal protection claim). Accordingly, Defendants are entitled to summary judgment on Gonzalez's equal protection claim.

### D.    *Respondeat Superior*

Finally, in a *Bivens* action, there can be no *respondeat superior* liability. Rather, defendants are liable only for their *personal acts*. *Buford v. Runyon*, 160

---

[17] In his sworn Declaration, Chaplain Landers explicitly states that he only admitted Protestant prisoners to the event if their names appeared on the list of attendees. (*Doc. 73-2, p. 3*).

F.3d 1199, 1203 n. 7 (8th Cir. 1998) (citing *Estate of Rosenberg*, 56 F.3d at 37); *see also Muick v. Reno*, 83 Fed. Appx. 851, 853 (8th Cir. 2003) (unpub. per curiam) (affirming grant of summary judgment in *Bivens* action; claims against supervisors properly dismissed as there is no *respondeat superior* liability under *Bivens*).

Gonzalez has failed to put forward any facts demonstrating that Warden Rivera or Supervisory Chaplain Johnson had any personal involvement in the matters giving rise to his claims. Because Gonzalez's claims against Defendants Rivera and Johnson are based solely on their supervisory roles, those claims also fail because neither of them can be held liable under the theory of *respondeat superior*.

## IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

Defendants' Motion for Summary Judgment, *doc*. *72*, be GRANTED, and Gonzalez's Complaint against them be DISMISSED, WITH PREJUDICE.

Dated this 17th day of August, 2018.

_____
UNITED STATES MAGISTRATE JUDGE